## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

VIVIANE MAJDALANI,                )
                                  )
                    Plaintiff,    )      **CIVIL ACTION**
                                  )
v.                                )      No. 06-1317-MLB
                                  )
LEGACY BANK,                      )
                                  )
                    Defendant.    )
_____)

### MEMORANDUM AND ORDER

This matter comes before the court on defendant Legacy Bank's partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 16.)  The motion has been fully briefed and is ripe for decision.  (Docs. 17, 26, 38.)  The motion is GRANTED in part and DENIED in part for the reasons stated herein.

## I.   FACTS[1]

Plaintiff, Viviane Majdalani, is a United States citizen of Lebanese origin and ancestry.  In 1995, plaintiff began her employment with Legacy Bank as a customer services representative.  Throughout the course of her employment with Legacy Bank, plaintiff expressed her desire for promotion within the bank.

In 1997, plaintiff applied for and was denied three positions at Legacy Bank: 1) a consumer loan officer position that was filled by

_____

[1]   All facts are taken from plaintiff's October 24, 2006 complaint and the documents attached thereto.  (Doc. 1.)  For the purposes of this motion, these facts are taken as true.  Ford v. West, 222 F.3d 767, 771 (10th Cir. 2000) (noting that for purposes of ruling on a motion to dismiss, all well-pleaded allegations in the complaint are taken as true and construed in the light most favorable to the plaintiff).

Kim Bugner, an American-born citizen; 2) an administrative assistant position that plaintiff was incorrectly told had been eliminated; and 3) a teller supervisor position that was filled by Terri Mason, an American-born citizen. In 2000, plaintiff applied for and was denied two positions at Legacy Bank: 1) a consumer loan officer position that was filled by Randy Staats, an American-born citizen; and 2) a consumer loan officer/branch manager position that was filled by Miranda Avery, an American-born citizen. Plaintiff alleges that in each instance she was more experienced and better qualified for the positions and was denied the positions based on her national origin and ancestry.

In November 2000, plaintiff was given limited consumer loan authority and her title was changed to customer services representative/loan assistant. Plaintiff alleges this was a gratuitous promotion.

In February 2002, plaintiff applied for and was denied two positions at Legacy Bank: 1) a consumer loan officer position that was filled by an American-born citizen; and 2) a branch consumer loan officer position that was filled by an American-born citizen. In August 2002, plaintiff applied for and was denied a lead branch customer services representative position at Legacy Bank and the position was filled by an American-born citizen. Plaintiff again alleges that in each instance she was more experienced and better qualified for the positions than the individuals hired.

Plaintiff also alleges she was discriminated against with respect to vacation requests. Plaintiff alleges that she was not allowed requested vacation dates but others not in "protected categories" were

-2-

allowed vacation days contrary to company policy.  Plaintiff alleges she was denied comparable raises and Christmas bonuses awarded to non-minority, American-born employees.  In addition, plaintiff alleges that beginning in October 2003, bank personnel began an e-mail campaign to harass and humiliate her.

Finally, plaintiff alleges a series of facts relating to one of her coworkers, Nancy Mundwiler.  On March 12, 2003, plaintiff filed a harassment complaint against Mundwiler for an incident in which Mundwiler had yelled across the bank lobby to tell plaintiff she had a telephone call.  Mundwiler yelled "it's someone who has an accent like you . . . could be your mom."  Plaintiff alleges that she reported the incident to the assistant vice president of Legacy Bank, Dan Madsen, but neither Madsen nor any other member of management investigated plaintiff's complaint.  Plaintiff alleges that Mundwiler subsequently violated "numerous company policies" which plaintiff reported but which were not investigated.  On April 17, 2003, plaintiff submitted a second grievance report to Madsen wherein she referenced her previous March 13 complaint.  Mundwiler eventually resigned.

On January 21, 2004, plaintiff filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission alleging national origin, ancestry, and retaliation discrimination.  Plaintiff's administrative complaint included her allegations of discrimination with regard to promotions, vacation requests, and retaliation.

Plaintiff alleges that from late January to February 2004, defendant restricted her job duties and work schedule which kept

-3-

plaintiff from earning overtime compensation.  On April 20, 2004, plaintiff applied for a mortgage loan department manager position but was denied the position.  On May 7, 2004, plaintiff applied for a branch manager/consumer loan officer position, but was denied the position.

On August 10, 2004, plaintiff was promoted to the position of branch manager/consumer loan officer, but the new position did not go into effect until October 1, 2004.  Plaintiff alleges that the position carried a job description that was different from the one utilized for the same position prior to her promotion.  While training for her new position, plaintiff alleges that she noticed on a computer monitor that she was scheduled for a disciplinary write-up in thirty days.

On January 18, 2005, plaintiff was terminated from her employment with Legacy Bank.  The reason given for her termination was that plaintiff was not meeting expectations.  On June 6, 2005, plaintiff amended her administrative complaint and alleged the August 2004 "promotion," the scheduled write-up, and her January 2005 termination.

Following investigation, on July 25 and August 9, 2006, the EEOC issued its right to suit letters regarding plaintiff's administrative complaints.  On October 24, 2006, plaintiff filed this civil action. In her complaint, plaintiff alleges: 1) violations of Title VII of the Civil Rights Act of 1964 based on discrimination and retaliation; and 2) violations of 42 U.S.C. § 1981 based on intentional race discrimination.

## II.  ANALYSIS

Defendant alleges that plaintiff's claims under Title VII

-4-

occurring prior to March 28, 2003 must be dismissed because they are administratively time barred and the court, therefore, lacks subject matter jurisdiction over the claims.  (Doc. 17 at 5-7.)  Defendant also moves to dismiss all plaintiff's claims under § 1981 occurring prior to October 24, 2002 based on a four-year statute of limitations. (Doc. 17 at 7-8.)  Finally, defendant moves to dismiss plaintiff's failure to promote claims brought under § 1981 occurring prior to October 24, 2004 based on a two-year statute of limitations.  (Doc. 17 at 9-11.)  Plaintiff responds that she was not required to timely file her claims under Title VII (Doc. 26 at 2-5), admits that § 1981 claims prior to October 24, 2002 are not actionable (Doc. 26 at 8), and denies that the two-year statute of limitations applies to her failure to promote claims under § 1981 (Doc. 26 at 5-8).

**A.  Title VII**

Title VII requires a plaintiff to exhaust her administrative remedies prior to suit.  Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005).  A Title VII plaintiff must exhaust administrative remedies for each individual discriminatory or retaliatory act.  Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003).  "Unexhausted claims involving discrete employment actions" are not viable.  Id. at 1210.

Defendant moves to dismiss plaintiff's failure to promote claims, which are properly characterized as discrete discriminatory acts. Each instance of alleged discriminatory failure to promote occurred under separate circumstances at distinct times over a seven year period, from 1997 through 2004.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination,

-5-

failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"); see also Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. ___, 127 S. Ct. 2162, 2169-70 (2007) (finding, in a pay discrimination case, that a Title VII disparate treatment claim must be based on the employer's discriminatory intent which occurs when the employer pays the employee, regardless of the timing of the later effects of that discriminatory intent).[2]

As part of the exhaustion requirement, Title VII requires a plaintiff to file a charge within 300 days of the allegedly discriminatory employment practice, in cases where the plaintiff has initially instituted proceedings with the state agency. 42 U.S.C. § 2000e-5(e)(1). Kansas is a deferral state where the 300 day time limit applies. See 29 C.F.R. § 1601.80 (designating the Kansas Commission on Civil Rights as a deferral agency); Brown v. Unified Sch. Dist. 501, 465 F.3d 1184, 1186 (10th Cir. 2006) (recognizing Kansas as a deferral state). "A discrete retaliatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." Morgan 536 U.S. at 110.

Defendant asserts that plaintiff's claims under Title VII

---

[2]    In Ledbetter, a May 2007 decision of the Supreme Court, the Court re-affirmed the holding, and this court's application of, Morgan. See Ledbetter, 550 U.S. at ___, 127 S. Ct. at 2169 (calling the instruction of Morgan clear; that the "EEOC charging period is triggered when a discrete unlawful practice takes place"). This continuing rigid application of the EEOC's filing deadlines provides further support for this court's finding, infra, that plaintiff has not timely exhausted her claims.

occurring prior to March 28, 2003 must be dismissed because they are time-barred.   Plaintiff, however, argues that the rules of law establishing the administrative time requirements do not apply to her claims.   Plaintiff argues that, prior to the Supreme Court decision in <u>Morgan</u>, 536 U.S. 101 (2002), litigants regularly argued that a series of alleged discriminatory acts were a continuing violation and therefore not time barred as long as the discrimination occurred, in part, within the limitations period.   (Doc. 36 at 3.)   Plaintiff then argues that litigants could not have anticipated the <u>Morgan</u> decision and that dismissal of her claims would constitute punishment for not knowing how the Supreme Court intended to handle this question of law. (Doc. 36 at 4.)   Plaintiff ultimately argues that it would be inequitable to dismiss her claims.   (Doc. 36 at 5.)

Contrary to plaintiff's argument, however, the 300 day time-bar arises from statutory authority, not Supreme Court precedent.  <u>See</u> 42 U.S.C. § 2000e-5(e)(1) (stating that a charge "shall be filed . . . within three hundred days after the alleged unlawful employment practice occurred").   <u>Morgan</u> was a racial discrimination and retaliation case construing Title VII's requirement that a charge be filed within 300 days.  <u>Id.</u> at 104-05.   The Court ruled that a suit based on discrete acts of discrimination that occur outside the 300-day period is untimely.[3]  <u>Id.</u> at 113.  <u>Morgan</u> simply eliminated what

---

[3] The Supreme Court in <u>Morgan</u> also discussed Title VII's timely filing requirements for the plaintiff's hostile work environment claim and held that an employee can recover on a hostile work environment theory for acts occurring more than 300 days before the administrative complaint was filed, as long as the acts are part of the same hostile work environment and at least one of the acts occurred within the 300-day period.  <u>Morgan</u>, 536 U.S. at 115-17.   In this case, plaintiff does not make a hostile work environment claim.

had been an effort by litigants to avoid Title VII's clear statutory language.  See id. at 108-09 (rejecting circuit courts' divergent practice of construing Title VII's deadlines and giving strict adherence to the procedural requirements established by the legislature).

In addition, Tenth Circuit cases decided after the Supreme Court's Morgan opinion have held firm to the 300 day filing requirement.  See, e.g., Brown v. Unified Sch. Dist. 501, 465 F.3d 1184, 1186-87 (10th Cir. 2006) ("[E]ach discriminatory act starts a new clock for filing charges alleging that act.  Thus, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." (quoting Morgan, 536 U.S. at 113)); Duncan v. Manager, Dep't of Safety, City and County of Denver, 397 F.3d 1300, 1308 (10th Cir. 2005) ("Title VII is not intended to allow employees to dredge up old grievances; they must promptly report and take action on discriminatory acts when they occur.  Unlitigated bygones are bygones."); Martinez v. Potter, 347 F.3d 1208, 1210-11 (10th Cir. 2003) (holding that "unexhausted claims involving discrete employment actions" are not viable, whether they occurred prior to the 300 day period or after the filing of the EEOC complaint); Davidson v. Am. Online, Inc., 337 F.3d 1179, 1184 (10th Cir. 2003) ("[A] continuing violation theory . . . is not permitted for claims against discrete acts . . . [t]hus, a claimant must file a charge . . . within the appropriate limitations period as to each such discrete act . . . that occurred.").

Plaintiff also argues that it would not be equitable to hold her to the standards of law outlined above.  Equitable doctrines are

-8-

available for a Title VII plaintiff.  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982); cf. Morgan, 536 U.S. at 121 (noting that an employer may be "significantly handicapped" in making its defense against a hostile work environment claim because of delay by the employee).  Plaintiff does not state how any equitable doctrine applies to the facts of this case, nor even which equitable doctrine should apply.  Regardless, the court rejects the application of any equitable doctrine because plaintiff has not alleged any facts which shows she has been lulled into inaction, thus triggering the tolling of her claims.  See Montoya v. Chao, 296 F.3d 952, 957 (10th Cir. 2002) (stating requirements of plaintiff for establishing equitable tolling of a Title VII claim).  In addition, application of equitable doctrines to plaintiff's failure to promote claims would cause inequity to defendant.  Robinson v. Bd. of Regents of the Univ. of Colo., 390 F. Supp. 2d 1011, 1017 (D. Colo. 2005) ("Because the charge is intended to give the employer notice of the claim and permit conciliation before litigation occurs, courts limit the scope of any Title VII claim to the matters raised in the EEOC charge and such matters that could reasonably be expected to arise therefrom.").

As a result of the above standards, plaintiff's failure to promote claims occurring prior to Title VII's 300-day time bar must be dismissed.  Plaintiff filed her administrative complaint on January 21, 2004.  The date 300 days previous to her filing is March 28, 2003. Plaintiff alleges eight claims of failure to promote occurring prior to March 28, 2003 (three claims from 1997, two claims from 2000, two claims from February 2002 and one claim from August 2002).  As a result, plaintiff's eight allegations of failure to promote which

-9-

occurred prior to March 28, 2003 are DISMISSED.

Plaintiff also alleges two incidents of failure to promote which occurred after her initial administrative complaint in January 2004 but prior to her amended administrative complaint in June 2005 (one claim from April 2004 and one claim from May 2004). These claims are not affected by the court's ruling.[4]

**B.  42 U.S.C. § 1981**

Defendant also alleges that a portion of plaintiff's § 1981 claims are made out of time. Plaintiff agrees that her claims under § 1981 which occurred prior to October 24, 2002 are not actionable, but argues that defendant has mischaracterized the nature of her remaining allegations under § 1981. A recent Tenth Circuit case states the law applicable to this portion of the parties' dispute:

> Harris[ v. Allstate Ins. Co., 300 F.3d 1183 (10th Cir. 2002)] addressed the interaction of 28 U.S.C. § 1658, which provides a four-year statute of limitations for claims arising under an Act of Congress enacted after December 1, 1990, and Congress' 1991 amendment to § 1981. We held in Harris that the four-year limitation period applies to causes of action made possible by the 1991 amendment to § 1981. That amendment overruled the Supreme Court's decision in Patterson v. McClean Credit Union, 491 U.S. 164, 177-78 (1989), which held that § 1981 did not apply to an employer's conduct after the formation of an employment relationship. After Harris, claims under § 1981 relying upon discrimination in contract formation, which were actionable prior to the 1991 amendment, would be

---

[4]  The court makes no ruling as to the continued survival of plaintiff's remaining failure to promote claims, or any of plaintiff's remaining allegations under Title VII. Defendant's motion to dismiss is limited in nature and addresses only exclusion of Title VII failure to promote claims occurring prior to March 28, 2003. The court has been briefed on no other issue and makes no suggestion as to the continued viability of plaintiff's remaining allegations under Title VII.

governed by residual state statutes of
limitations, here two years. Claims relying upon
an employer's post-formation conduct, however,
would be subject to the four-year statute of
limitations under § 1658, because they were made
possible by the 1991 amendment. The Supreme
Court recently approved of this approach in Jones
v. R.R. Donnelley & Sons Co., 541 U.S. 369
(2004).

Whether a two- or four-year limitation period
applies to [the employee's] claim for failure to
promote depends, therefore, upon whether such a
claim would have been actionable under the pre-
1991 version of § 1981. Some failure to promote
claims were actionable before the 1991 amendment,
but only those that rose to the level of an
opportunity for a new and distinct relation
between the employee and the employer. In other
words, a failure-to-promote claim was actionable
before the 1991 amendment if it equated to
contract formation. Thus, if a 'new and distinct
relation' between [the employee] and [the
employer] would have resulted from [the
employee's] promotion . . ., then the state's
residual two-year statute of limitations for
personal injury actions would apply to limit [the
employee's] claim. If no such new relationship
would have resulted, the 1991 amendment to § 1981
made [the employee's] claim viable as post-
formation conduct and the four-year limitation
period would apply.

. . .

In Hooks[ v. Diamond Crystal Specialty Foods,
Inc., 997 F.2d 793 (10th Cir. 1993)], this court
noted that whether a new and distinct
relationship emerges from promotion should not be
measured in quantitative terms, like the amount
of potential pay increase. Rather, a court
should look to whether there exists a meaningful,
qualitative change in the contractual
relationship. We do not confine our inquiry to
titles, but should examine actual changes in
responsibility and status. Such changes in the
contractual relationship could include promotions
from nonsupervisory positions to supervisory
positions and advancements from being paid by the
hour to being a salaried employee.

Cross v. The Home Depot, 390 F.3d 1283, 1288-89 (10th Cir. 2004)

(internal citations and quotations omitted).[5]

In <u>Cross</u>, the plaintiff was denied a promotion from assistant store manager to store manager.  <u>Id.</u> at 1285.  In support of its argument that the promotion would have caused a "new and distinct" relationship between the parties - and thus qualified for the shorter, two-year statute of limitations - the plaintiff's employer put forth the following evidence: 1) an assistant manager supervised two people, while a store manger supervised one hundred fifty to two hundred people; 2) an assistant manager manages a couple of store departments while a store manager oversaw the overall financial condition of the store, including $25 to $45 million in annual receipts; 3) salaries for store managers far exceed salaries for assistant store managers; 4) store managers are eligible to receive bonuses; 5) there were significantly different opportunities for advancement between assistant store managers and store managers.  <u>Id.</u> at 1289.

In contrast, the plaintiff in <u>Cross</u> noted that: 1) the qualifications for and duties of assistant store manager and store manager were identical; 2) both were supervisory exempt positions under the Fair Labor Standards Act; and 3) both were paid a salary rather than hourly wages.  <u>Id.</u>  The Tenth Circuit ultimately found that no new and distinct employment relationship would have emerged from the plaintiff's promotion and, therefore, the four-year statute of limitations applied to the plaintiff's claims under § 1981.  <u>Id.</u>

---

[5]  The forum state's statute of limitations for personal injury actions governs discrimination claims under § 1981 involving the formation of employment contracts.  <u>Brown v. Unified Sch. Dist. 501</u>, 465 F.3d 1184, 1188 (10th Cir. 2006).  In Kansas, a two year statute of limitations applies, K.S.A. § 60-513(a), which is the same time period as that applied with the Colorado limitation period in <u>Cross</u>.

at 1290.

Plaintiff alleges that the Court does not have enough information to make the kind of determination discussed in Cross. Alternatively, plaintiff alleges that her failure to promote claims are not based on conduct that would have created a new employment contract, and thus the four-year statute of limitations, rather than the two-year statute of limitations as urged by defendant, applies. Defendant replies that:

> There are only two failure to promote claims that may be relevant under § 1981 because only two of plaintiff's alleged claims occurred within the four years prior to plaintiff filing suit. Plaintiff attempted to redefine her relationship with her employer by seeking a mortgage loan department manager position and a branch manager/consumer loan officer position in 2004. Both of these positions involved supervising individuals and would have changed plaintiff's status with defendant. Had Plaintiff obtained these positions, a new contractual relationship would have been formed.

(Doc. 38 at 6.) The court agrees with plaintiff that not enough information is before the court to make a determination concerning "the qualitative change in the employment relationship that would mandate application of the two-year statute of limitations." Cross, 390 F.3d at 1290. Defendant has not shown that a new and distinct relationship would have emerged merely by alleging that the two promotions at issue "involved supervising individuals." (Doc. 38 at 6.) No details about plaintiff's position at the time she applied for the promotions is alleged and, therefore, no true comparison can be made. As a result, defendant's motion to dismiss plaintiff's § 1981 claims occurring prior to October 24, 2004 is DENIED, but defendant's motion to dismiss plaintiff's § 1981 claims occurring prior to October

-13-

24, 2002 is GRANTED.[6]

## III.   CONCLUSION

Defendant's partial motion to dismiss (Doc. 16) is GRANTED in part and DENIED in part for the reasons stated herein.  Defendant's motion to dismiss plaintiff's allegations under Title VII which occurred prior to March 28, 2003 is granted.  Defendant's motion to dismiss plaintiff's allegations under § 1981 which occurred prior to October 24, 2002 is granted.  Defendant's motion to dismiss plaintiff's allegations under § 1981 which occurred between October 24, 2002 and October 24, 2004 is denied.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp, 810 F. Supp. 1172, 1174 (1992).  The response to any motion for reconsideration shall not exceed 3 double-spaced pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this   18th   day of June, 2007, at Wichita, Kansas.

S/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

---

[6]   In the event plaintiff's response can be construed to assert equitable doctrines (to avoid the applicability of the four-year statute of limitations to her § 1981 claims), this request is denied. The Tenth Circuit has previously determined that equitable doctrines utilized in Title VII actions are not appropriate for § 1981 claims. Amro v. Boeing Co., No. 97-3049, 1998 WL 380510, at *2 n.4 (10th Cir. 1998)("Plaintiff may not avoid the statute of limitations [governing § 1981] by employing the continuing violations doctrine because the doctrine is not available to a plaintiff who brings a § 1981 claim." (citing Thomas v. Denny's, Inc., 111 F.3d 1506, 1513-14 (10th Cir. 1997))).